UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PRINCE JOURDAIN,

        Plaintiff,

v.

ANDREW SAUL, COMMISSIONER,

        Defendant.

**Hon. Hugh B. Scott**

**18CV1098**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 7 (plaintiff), 15 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 5 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 17).

## PROCEDURAL BACKGROUND

The plaintiff ("Prince Jourdain[1]" or "plaintiff") filed an application for disability insurance benefits on March 17, 2015, for his Title XVI Supplemental Security income

---

[1]Plaintiff legally changed his name to Mulumba Kabuya, R. 85, 195, 402, 249, 10.

application and April 13, 2017, for his Title II disability application [R. 10]. Those applications were denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated June 29, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on August 8, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on October 3, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 7, 15), and plaintiff duly replied (Docket No. 16). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 35-year-old as of the onset date of July 1, 2014 [R. 10], with a high school education and a bachelor's degree [R. 39], last worked as a canvasser, construction worker, dishwasher, and mover (very heavy exertion work) [R. 20]. With the residual functional capacity assessment discussed below, the ALJ found that plaintiff was unable to perform this past relevant work [R. 20]. He contends that he was disabled as of the onset date of July 1, 2014 [R. 10]. Plaintiff also claims major depressive disorder but the ALJ concluded that this impairment was not severe [R. 14].

Plaintiff claims the following impairments deemed severe by the ALJ: degenerative disc disease of the lumbar and cervical spine and cervical radiculopathy [R. 13].

**MEDICAL AND VOCATIONAL EVIDENCE**

Plaintiff testified that he had a bulging disc with root nerve impingement, causing pain to radiate down from his neck to his left (non-dominant) arm and fingers [R. 48-49] (see Docket No. 15, Def. Memo. at 2). He complains of sleep difficulties due to this pain [R. 49]. He stated that he also had leg pain running down his leg that inhibited his walking [R. 50]. He said that he could lift about 10 pounds with his good arm, trying to limit it to less than that [R. 66]. He also testified that he limited the number of times he did laundry and to loads that weighed 5 pounds carried in his good arm [R. 61-62].

Plaintiff also testified that he practiced judo since age of 9, competing domestically and internationally [R. 58]. The ALJ found that "since May 9, 2017, [plaintiff] has been practicing his Judo" [R. 19]. Plaintiff, however, disputes that he testified to presently engaging in judo (Docket No. 7, Pl. Memo. at 19), and that this finding has import on plaintiff's credibility (see id.). Plaintiff testified that, due to his depression, he no longer engaged in hobbies such as going to the gym [R. 64-65] or presumably judo. Plaintiff also notes that he did not list judo as a hobby on his disability report [R. 195] (id.).

At issue here are the medical opinions of two treating sources for plaintiff. P.A. Colleen Lemankiewicz, working with Dr. Jennifer Abeles, evaluated plaintiff on September 17, 2015 [R. 391-92]. She listed plaintiff's medical condition was disc degeneration but did not know its expected duration, requiring a neurosurgeon's evaluation [R. 391, 19]. She then noted functional limitations, that plaintiff was very limited in lifting and climbing; pushing, pulling, and bending, while he was moderately limited in walking, standing, sitting, and climbing stairs,

but had no limitations in using his hands [R. 392, 19]. Lemankiewicz also found no mental functioning limitations [R. 392].

On July 14, 2016, Dr. Abeles evaluated plaintiff [R. 389-90, 291-92, 19]. As for functional limitations, Dr. Abeles found plaintiff was very limited in lifting and carrying; pushing, pulling, and bending, while moderately limited in walking, standing, sitting, climbing stairs, but with no evidence of limitations for seeing, hearing, or speaking, or using his hands [R. 292, 390, 19]. The doctor noted plaintiff had back problems that limited his ability to do any lifting or any hard, physical work while he was able to do home physical therapy [R. 292, 390]. Dr. Abeles did not know the expected duration for plaintiff's disc degeneration, also requiring an evaluation by a neurosurgeon [R. 291]. Dr. Abeles also found that plaintiff had no mental functioning limitations [R. 293, 390]. Finding that this opinion was consistent with the medical evidence, the ALJ gave great weight to Dr. Abeles' opinion [R. 19].

Lemankiewicz evaluated plaintiff again on February 1, 2017 [R. 388]. She opined that plaintiff was very limited in lifting and carrying; pushing, pulling, and bending; and using his hands, while moderately limited in climbing stairs, but having no limitation in other functioning [R. 388]. Lemankiewicz concluded that plaintiff was limited in lifting and using hands or arms [R. 388]. She opined that plaintiff's cervical radiculopathy had an expected duration of 4-6 months [R. 387]. She also found no mental functioning limitations [R. 388], despite examining plaintiff on January 12, 2017, and his noting that his worsening pain was causing him to be depressed and referring plaintiff to a psychologist [R. 316, 318] (see Docket No. 7, Pl. Memo. at 5). The ALJ gave great weight to this opinion [R. 19].

4

The ALJ found that plaintiff now had a residual functional capacity ("RFC") to perform light work, that is, lifting, carrying, pushing, and pulling up to 20 pounds occasionally and 10 pounds frequently [R. 16, 20]. Plaintiff can handle, finger, and feel items occasionally with hands; can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally [R. 16]. With that RFC, the vocational expert opined that a hypothetical claimant like plaintiff in age, education, and work experience could work in such occupations as usher, tanning salon attendant, or pager (all light exertion work) [R. 21]. As a result, the ALJ concluded that plaintiff was not disabled [R. 21].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.  General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.

1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. First, plaintiff argues that the RFC is unsupported by substantial evidence because the ALJ failed to evaluate properly the medical opinions of Dr. Abeles and P.A. Lemankiewicz (Docket No. 7, Pl. Memo. at 1, 10-13). This physical RFC is unsupported by substantial evidence because it is based upon the ALJ's lay opinion because, while giving "great weight" to the opinions of these two treating sources, the ALJ found plaintiff could lift where these sources said he could not (id. at 1, 13-17). Next, plaintiff faults the ALJ for not properly evaluating plaintiff's credibility (id. at 1, 17-21).

Finally, plaintiff chides the ALJ for not evaluating his depression as a severe impairment or considering it among his deemed severe impairments (id. at 1, 21-22).

Defendant responds that Dr. Abeles and Lemankiewicz found that plaintiff's neck and back pain symptoms were temporary, not lasting more than 4-6 months, and that plaintiff had the burden of establishing debilitating symptoms for at least 12 months and did not do so (Docket No. 15, Def. Memo. at 14, 15-17, 17-18, 23). The ALJ did recognize the limitations stated in Dr. Abeles and Ms. Lemankiewicz's opinions by putting a 10=pound weight limitation in the RFC (id. at 14, 22). The substantial record and plaintiff's activities of daily living belie any disability (id. at 14-15, 17). As for plaintiff's claimed depression, Dr. Abeles and Ms. Lemankiewicz concluded that plaintiff did not demonstrate evidence of any psychological limitations [R. 292-93] (id. at 24).

Plaintiff thus critiques the ALJ's evaluation of the two medical source opinions in two ways; first in the discrepancy in accepting the opinions by giving them great weight but then diverging with the ultimate RFC and by apparently applying the ALJ's lay opinion to reach that result.

I.  Evaluation of Medical Opinions

The ALJ gave great weight to the opinions of Dr. Abeles and P.A. Lemankiewicz [R. 19] but differed from the RFC on the amount of lifting plaintiff could perform [R. 16]. Both providers found that plaintiff was very limited in lifting [R. 392, 292, 390], which the ALJ noted [R. 19]. The RFC, however, found that plaintiff could lift 10 pounds frequently or 20 pounds occasionally to support a finding that he could perform light work [R. 16]. The ALJ noted that plaintiff's daily activities supported the RFC [R. 18-19]. While plaintiff reported avoiding

8

lifting, especially heavy items [R. 212, 18] and stating that he could pick up with his right, unaffected arm up to 5 pounds and avoidance of picking up more than 10 pounds, the ALJ later noted that plaintiff's testimony of his activities of daily living had not changed since answering the questionnaire [R. 19].

Plaintiff argues that the ALJ's granting great weight to Lemankiewicz's and Dr. Abeles' opinions but finding an RFC of light work is a contradiction (Docket No. 7, Pl. Memo. at 12). One cannot simultaneously be very limited in lifting but also able to lift 10 pounds frequently (id.). To make this RFC and accept Lemankiewicz's opinion, plaintiff contends the ALJ had applied selective adoption of the least supportive portions of that opinion (as well as the opinion of Dr. Abeles) (id.). As plaintiff later argues in reply, the ALJ fails to explain rejection of the favorable limitation on lifting yet giving "great weight" to those opinions (Docket No. 16, Pl. Reply Memo. at 1, 3).

Defendant counters that Dr. Abeles found that plaintiff's back pain symptoms were temporary, lasting no longer than six months (Docket No. 15, Def. Memo. at 14, 19) and that Lemankiewicz's opinion was inconclusive (id. at 18). Furthermore, defendant argues that plaintiff ignores aspects of Lemankiewicz's (id. at 18-20) and Abeles' opinions that the symptoms were temporary (id. at 19-20). Plaintiff also disregards his own testimony that he claimed he could lift up to 10 pounds [R. 66] (id. at 20; cf. [R. 61-62, plaintiff testifying that he limits his carrying to 5 pounds) and his stated daily activities that support the RFC (Docket No. 15, Def. Memo. at 20).

All agree that plaintiff cannot lift heavy objects [R. 390, 16, 19]. The issue is whether the medical opinions that plaintiff is "very limited" in lifting means that he cannot occasionally

lift 10 pounds. Plaintiff stated that he lifted up to 10 pounds. The other fact is that the medical source opinions here only determined plaintiff's limitations were temporary, for no longer than 6 months as of July 2016 [R. 290, 389; see R. 387 (Feb. 2017)]. For disability, the impairment must last at least 12 months, 20 C.F.R. § 404.1509, 416.909; Barnhart v. Walton, 535 U.S. 212, 216-22 (2002) (Docket No. 15, Def. Memo. at 19). Plaintiff has not established this duration requirement.

II.     ALJ's Lay Opinion

Plaintiff alternatively argues that the ALJ needed medical opinions rather than his lay opinion to reach the RFC (Docket No. 7, Pl. Memo. at 13-17; Docket No. 16, Pl. Reply Memo. at 3-4). By selective adoption of the medical opinions given "great weight" and relying upon no other medical opinions, the ALJ reached the different RFC based on his lay understanding (Docket No. 7, Pl. Memo. at 15; Docket No. 16, Pl. Reply Memo. at 3). In addition to the opinions of Dr. Abeles and Ms. Lemankiewicz, plaintiff argues that medical imaging showed plaintiff had significant limitations [R. 263] (Docket No. 7, Pl. Memo. at 16-17).

Defendant responds that plaintiff is incorrect and the ALJ did not base his decision on his lay opinion; instead, the ALJ considered all the relevant evidence as required by regulations (Docket No. 15, Def. Memo. at 23, 21-22), 20 C.F.R. §§ 404.1523, 416.923.

This Court finds that the ALJ did not apply his lay opinion or his lay consideration of raw medical data to reach the RFC. The ALJ here applied all the medical and other evidence in this record. There is substantial evidence to support the RFC found by the ALJ. Plaintiff's arguments on this (and the consideration of medical opinions) basis are **rejected**.

III.     Plaintiff's Credibility

Plaintiff next points to the ALJ's erroneous finding that plaintiff still practices judo and that this error reflects on the ALJ dismissing plaintiff's credibility (Docket No. 7, Pl. Memo. at 19). Defendant counters that the ALJ no longer assesses claimant credibility, see SSR 16-3p (Docket No. 15, Def. Memo. at 14-15).

The ALJ found that plaintiff competed in judo at the master and professional level for several years and "that since May 9, 2017, he had been practicing his Judo" [R. 19]. That date is after the April 28, 2017, hearing [R. 10, 32]. It is not clear where this May 9, 2017, date came from since the record mostly predates that date. One of the last items was supplementation of the medical record submitted on May 22, 2017 [R. 401, Ex. 10F], which consists of Buffalo General Hospital records from December 15-16, 2014 [R. 401-12].

Plaintiff would have a point if credibility assessments were made that inaccuracies in the ALJ's findings would point to not evaluating plaintiff's credibility. It is not clear how the ALJ concluded that plaintiff still engages in judo or that since the date of the hearing in May 2017 that plaintiff has been practicing that martial art (cf. [R. 19]).

SSR 16-3p, effective March 16, 2016, replaced an earlier Social Security Ruling that called for assessment of the credibility of a claimant's statement (SSR 96-7p), see also Va. L. S. v. Comm'r of Soc. Sec., No. 5:18CV937, 2020 U.S. Dist. LEXIS 17886, at *15 n.3 (N.D.N.Y. Feb. 3, 2020) (applying SSR 16-3p to ALJ decision rendered after March 2016). The new ruling eliminated credibility from "the 'sub-regulatory policy' because the regulations themselves do not use that term. Instead, symptom evaluation tracks the language of the regulations," Natashia R. v. Berryhill, No. 3:17CV1266, 2019 U.S. Dist. LEXIS 44289, at *28

11

(N.D.N.Y. Mar. 19, 2019) (Wiley Dancks, Mag. J.), while the standard for evaluating subjective symptoms remains unchanged, id, at *28 n.7. SSR 16-3p calls upon ALJs to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms," SSR 16-3p, 2016 SSR LEXIS 4, at *2 (2016). Therefore, reference to plaintiff's practicing judo is but one fact as part of an entire record that the ALJ considered in determining plaintiff's RFC. Plaintiff cites to cases tying the accuracy of factual recitation to claimant's credibility (see Docket No. 7, Pl. Memo. at 19), but most of those decisions predate enactment of SSR 16-3p, with one post-2016 decision citing the standard under the former SSR 96-7p, see Maxwell v. Berryhill, No. 15CV585, 2017 U.S. Dist. LEXIS 186214, at *15 (W.D.N.Y. July 19, 2017) (McCarthy, Mag. J.) (Report & Rec.), adopted, 2017 U.S. Dist. LEXIS 181998 (W.D.N.Y. Nov. 2, 2017) (Telesca, J.). Thus, plaintiff's credibility is no longer an issue (or a distinct issue) and plaintiff's argument on this ground is **rejected**.

IV. Plaintiff's Depression as a Limitation

Finally, plaintiff argues that the ALJ did not consider his claimed depression (arising from his back and neck pain [R. 337]), first as a severe impairment and second, if deemed non-severe, as a factor in evaluating his other impairments in totality. The ALJ found that plaintiff's major depressive disorder was non-severe "as the evidence [did] not support a finding that this impairment caused or is expected to cause more than minimal limitation in the claimant's ability to perform basic mental work activities for at least 12 consecutive months" [R. 14]. Although the ALJ evaluated plaintiff's depression at Step Two and stated that the "paragraph B" analysis applied only to Steps Two and Three and that a mental RFC assessment required a more detailed assessment [R. 14-15, 15], the ALJ did not comment on plaintiff's depression in formulating the

RFC (cf. [R. 16-20]). The RFC itself only provided limitations regarding plaintiff's physical limitations [R. 16].

While Dr. Abeles and P.A. Lemankiewicz opined no mental health limitations [R. 292, 390, 293, 388, 392], the record does not contain any psychological or psychiatric treatment by plaintiff, despite the referral by Lemankiewicz [R. 312-13, 318] (Docket No. 15, Def. Memo. at 8). Plaintiff had no history of psychiatric diagnoses or treatment [R. 357] (Docket No. 15, Def. Memo. at 9) but plaintiff was taking psychiatric medication [R. 307-08] and those treatments were "really helping" [R. 305] (id.).

Plaintiff has the burden at Step Four to show that he does not have the residual functional capacity to perform his past relevant work, 20 C.F.R. §§ 404.1520(f), 416.920(f) (Step Four), 404.1512(a)(1), 416.912(a)(1) (claimant's burden of proof). Plaintiff has not established that his depression is a severe limitation or that, combined with his physical limitations, hindered him from working. While he points out indicia of his depression (Docket No. 6, Pl. Memo. at 22, citing [R. 337, 67, 68, 69, 383, 362, 272, 378, 397, 55, 395, 367]), two treating sources (given great weight by the ALJ) that he relies upon for other purposes, Dr. Abeles and Ms. Lemankiewicz, both found no mental health limitations [R. 292, 390, 293, 388, 392]. The RFC was silent as to plaintiff's medical condition and the ALJ did not err in not mentioning plaintiff's depression after Step Two of his analysis.

Plaintiff's motion on this ground is **denied**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 7) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 15) for judgment on the pleadings is **granted**.

Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

                                                  *s/Hugh B. Scott*
                                                  Hon. Hugh B. Scott
                                         United States Magistrate Judge

Buffalo, New York
February 19, 2020